IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SIDNEY FERENC, LEGACY RE, LTD., a
British Virgin Islands insurance company,
AND ROCK SOLID GELT LIMITED, a
Delaware limited partnership, AND 407
DEARBORN, LLC, a Delaware limited
liability company

              Plaintiffs,

           v.

KAREN BRENNER, FORTUNA ASSET
MANAGEMENT, LLC, a California limited
liability company, AND MICHAEL
HORRELL,

              Defendants.

No.

## **COMPLAINT**

Plaintiffs, Sidney Ferenc, Legacy Re, Ltd., Rock Solid Gelt Limited, and 407

Dearborn, LLC, by their counsel and for their complaint against Defendants, Karen

Brenner, Fortuna Asset Management, LLC, and Michael Horrell, hereby allege as

follows:

## **Parties and Jurisdiction**

1.      Plaintiff, Sidney Ferenc ("Ferenc"), is domiciled in and is a citizen of

Florida.

2.      Plaintiff, Legacy Re, Ltd. ("Legacy Re"), is a British Virgin Islands

insurance company which is organized under the laws of the British Virgin Islands and

has its principal place of business in Nebraska.  Its shareholder is a foreign trust of

which Ferenc is the Trustee.

3.      Plaintiff, Rock Solid Gelt Limited ("Rock Solid"), is a Delaware limited partnership. Its general partner is Sidney Ferenc. Its limited partner is a foreign trust of which Ferenc is the Trustee. None of its partners are citizens of Illinois.

4.      Plaintiff, 407 Dearborn, LLC, is a Delaware limited liability company. Its members are Rock Solid and Jeffrey A. Silver, a resident and citizen of Nebraska.

5.      Defendant, Karen Brenner ("Brenner"), is domiciled in and is a citizen of California.

6.      Defendant, Michael Horrell ("Horrell"), is domiciled in and is a citizen of Illinois.

7.      Defendant, Fortuna Asset Management, LLC ("FAM"), is a California limited liability company. Karen Brenner is the managing member of FAM. All of its members are citizens of California, and in any event, not citizens of Illinois.

8.      This Court has original jurisdiction over the state law claims under 28 U.S.C. § 1332(a) based on diversity of citizenship and the amount in controversy which exceeds $75,000 exclusive of interest and costs. This Court has jurisdiction over the federal law claims pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1965.

9.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's claim occurred in the Northern District of Illinois, or substantial part of the property that is the subject of this action is situated in the Northern District of Illinois, or the defendants are subject to personal jurisdiction in the Northern District of Illinois and there is no other district in Illinois in which the action may be brought. Venue is proper under 18 U.S.C. § 1965, because defendants reside in, are found in, have an agent in, and/or transact their affairs in the Northern District of Illinois.

## Nature of the Case

10.　　This action arises from the wrongful breach of fiduciary duty owed by one or more of the defendants, and the other defendants' knowing participation in that breach and their wrongful receipt of benefits as a result thereof.

## Facts

11.　　In 2005, Brenner solicited Ferenc (through Legacy Re) to make a $2 million investment in Fortuna Stream, L.P. ("Fortuna Stream"), a California limited liability company.  Brenner is the general partner of Fortuna Stream.  Legacy Re became a limited partner and contributed $2 million to Fortuna Stream.  Legacy Re remains a limited partner of Fortuna Stream.

12.　　Subsequently, in approximately 2006, Brenner solicited Ferenc to provide (through Brenner's entity, FAM) investment management services and advice. Among other things, an account was established by FAM at Bear Stearns, in the name of or for the benefit of Ferenc, over which FAM had discretionary trading authority.  FAM held itself out to Ferenc as having special expertise and knowledge, as well as access to unique investment opportunities.  Ferenc trusted it to provide him with investment advice, and it accepted that position of trust.  When it came to how Ferenc should invest his money, FAM had ascendancy over him.  FAM owed Ferenc a fiduciary duty.

13.　　Brenner was a subagent employed by FAM and owed to Ferenc the same fiduciary duties owed to him by FAM.

14.　　Brenner and FAM advised and encouraged Ferenc to purchase an interest in a $7.25 million loan made by Fortuna Stream to Scattered Corporation, a South Dakota corporation (the "Scattered Loan"), which was secured in part by a mortgage on property commonly known as 407 S. Dearborn, Chicago, Illinois (the

"Dearborn Property") and a mortgage on property commonly known as 401 S. LaSalle Street, Chicago, Illinois ("LaSalle Property").

15.     In 2006, Ferenc purchased two separate interests in the Scattered Loan – one he purchased (through his entity, Legacy Re) directly from Fortuna Stream for $450,000,  and the other he purchased (through his entity, Rock Solid) from ACF Property Management, Inc., another holder of a participation in the Scattered Loan, for approximately $3.8 million (collectively the "Scattered Loan Participations").  On information and belief, ACF Property Management, Inc. was owned or controlled by Alan Fox, another investment client of Brenner and FAM.

16.     At the time of the purchase of the Scattered Loan Participations, the Dearborn Property was owned by Old Colony Partners Limited Partnership, an Illinois limited partnership ("Old Colony"), and the LaSalle Property was owned by 401 Properties Limited Partnership, an Illinois limited partnership ("401 Properties").

17.     On information and belief, Horrell was an agent of, or had a direct or indirect interest in, the Dearborn Property and the LaSalle Property.

18.     Scattered Corporation ("Scattered") subsequently defaulted on the Scattered Loan, which was resolved by a series of transactions which included the conveyance of the Dearborn Property to a newly-created entity, 407 Dearborn, LLC, a Delaware limited liability company ("407 Dearborn"), and by the execution and delivery by 401 Properties of a new promissory note in the amount of approximately $3.2 million payable to Fortuna Stream (the "401 Note").  On or about September 22, 2009, Fortuna Stream assigned to Legacy Re an undivided 6.206% interest in the 401 Note, and assigned to Rock Solid Gelt an undivided 48.276% interest in the 401 Note.  Rock Solid and Legacy Re were members of 407 Dearborn, along with Fortuna Stream and affiliates

of FAM, until June, 2011, at which time Rock Solid acquired all of the interests in 407 Dearborn.

19.     During the period from approximately March, 2009 through June, 2011, 407 Dearborn was controlled and managed by Brenner, FAM and/or Horrell (directly or indirectly through 407 Dearborn Manager, LLC).  In June, 2011, an affiliate of Ferenc and/or Rock Solid assumed the control and management of 407 Dearborn.

## Count I
## Legacy Re and Rock Solid Claims Against Brenner and FAM

20.     Plaintiffs Legacy Re and Rock Solid reallege and incorporate the allegations of paragraphs 1 through 19 above as and for their allegations of this paragraph 20.

21.     From and after their purchase of the Scattered Loan Participations, Brenner and FAM provided investment management services and advice to Legacy Re and Rock Solid with respect to the Scattered Loan Participations and other investments. Brenner and FAM held themselves out to Legacy Re and Rock Solid as having special expertise and knowledge, as well as access to unique investment opportunities.  Legacy Re and Rock Solid trusted Brenner and FAM to provide them with management services and investment advice unfettered by any conflicts of interest, and Brenner and FAM accepted that position of trust.  When it came to how Legacy Re and Rock Solid should invest their money, Brenner and FAM had ascendancy over them.  Brenner and FAM owed Legacy Re and Rock Solid a fiduciary duty.

22.     At the time of the purchase of the Scattered Loan Participations, Brenner, FAM, and/or Fortuna Stream knew or should have known that Scattered was

unlikely to repay the Scattered Loan and/or that the value of the Dearborn Property and the LaSalle Property were probably not sufficient to secure the repayment of the Scattered Loan.

23.     Brenner, FAM, and Fortuna Stream did not adequately disclose or discuss with Legacy Re or Rock Solid the risks associated with the purchase of Scattered Loan Participations.  They were not provided with, and they were not advised to undertake, the basic due diligence and underwriting that would typically be done in connection with such purchase, including obtaining financial statements and information regarding Scattered, Old Colony and 401 Properties as well as current appraisals or value estimates of the Dearborn Property and the LaSalle Property. Brenner and FAM held themselves out to Legacy Re and Rock Solid as having special expertise in determining the suitability and advisability of making such an investment, and Legacy Re and Rock Solid relied on their advice in purchasing the Scattered Loan Participations.

24.     On information and belief, Brenner and FAM advised Legacy Re and Rock Solid to purchase the Scattered Loan Participations in order to reduce the exposure of Fortuna Stream, Brenner and the other investment clients of FAM, including Alan Fox.  Legacy Re and Rock Solid's purchase of the Scattered Loan Participations was intended to be and was in fact for the benefit of Fortuna Stream, Brenner and the other investment clients of FAM, including Alan Fox.

25.     In providing such advice, Brenner and FAM breached their fiduciary duty to Legacy Re and Rock Solid.  Fortuna Stream knowingly participated in and benefited from that breach of fiduciary duty.

NGEDOCS: 1873480.9

26.     Legacy Re and Rock Solid have lost all or much of their investment in the Scattered Loan.

27.     As a result of defendants' breach, Legacy Re and Rock Solid have each suffered damages in an amount in excess of $75,000, exclusive of interest, attorney's fees and costs.

28.     In addition, Legacy Re and Rock Solid paid to FAM "performance" or other fees for its services and advice, which FAM in turn paid over to Brenner, in whole or in part.  FAM and Brenner should be required to disgorge such fees, including fees and amounts paid by Legacy Re and Rock Solid in connection with additional investments besides the Scattered Loan Participations.

29.     Until approximately December, 2007, Legacy Re and Rock Solid received payments in connection with their purchase of the Scattered Loan Participations.  It was not until March, 2009, that the Scattered Loan Participations were exchanged or converted into membership interests in 407 Dearborn and an interest in the 401 Note made by 401 Properties.  In June, 2011, Legacy Re surrendered all of its interest in 407 Dearborn in exchange for a larger interest in the 401 Note, an exchange which is unlikely to result in recouping its investment.

30.     Legacy Re and Rock Solid did not know sufficient facts, and in the exercise of reasonable diligence could not have been expected to know sufficient facts, to put them on notice that they had been injured and that defendants had breached their fiduciary duties, or knowingly participated in a fiduciary breach, until on or after June, 2011.

WHEREFORE, Legacy Re and Rock Solid request judgment in their favor against Brenner and FAM, jointly and severally, for damages in an amount to be determined at trial; an order directing Brenner and FAM to account for and disgorge all fees or profits received by or made to them from the investments of Legacy Re and Rock Solid; award pre-judgment interest, attorneys' fees and costs; and such other and further relief as is just and proper.

### Count II
### 407 Dearborn Claims Against Brenner, FAM and Horrell

31.     407 Dearborn realleges and incorporates the allegations of paragraphs 1 through 26 above as and for their allegations of this paragraph 31.

32.     407 Dearborn acquired title to and control of the Dearborn Property in March, 2009.

33.     From March, 2009 through June, 2011, 407 Dearborn was controlled and dominated by Brenner, FAM and Horrell.

34.     Prior to June, 2011, Brenner and FAM caused 407 Dearborn to pay various fees and amounts to Brenner, FAM, Horrell and/or Horrell's affiliates, some of which were ostensibly for management fees, even though 407 Dearborn had hired a third-party manager, Joseph Cacciatore or his affiliates, to manage the Dearborn Property.  The exact amount of such payments are not fully known because many of 407 Dearborn's books and records are in the possession of Horrell and he has failed, refused, and neglected to turn them over to 407 Dearborn despite multiple demands to do so.

35.     Prior to June, 2011, Brenner, FAM and/or Horrell caused 407 Dearborn to accept loans from them or their affiliated entities, for which they were repaid in full together with interest at a *per annum* rate equal to 13% or more.

- 8 -

36.     Brenner and Horrell have various business interests together, and Brenner represented to Ferenc that Horrell was her "partner" and that he could "step into her shoes" to manage FAM if something ever happened to her.

37.     407 Dearborn did not receive fair consideration, or it received no consideration, for the goods and services allegedly supplied by Horrell and/or Horrell's affiliates. The invoices submitted by Horrell and/or his affiliates included mark-ups or other excessive charges, which were not disclosed or were not adequately disclosed to 407 Dearborn.

38.     Because of their relationship with Horrell, Brenner and FAM either deliberately or negligently authorized the payments to Horrell and/or his affiliates, which payments were not in the best interests of 407 Dearborn or its members.

39.     The improper payments to Horrell and/or his affiliates exceed $75,000.

40.     Brenner and Horrell knew or should have known that the payments to Horrell and/or his affiliates were improper, and that in authorizing such payments, Brenner and FAM were breaching their obligations to 407 Dearborn and its members.

41.     As a result of defendants' breach, 407 Dearborn has suffered actual damages in an amount in excess of $75,000, exclusive of interest, fees and costs.

WHEREFORE, 407 Dearborn requests judgment in its favor against Brenner, FAM, and Horrell , jointly and severally for damages in an amount to be determined at trial; an order directing them to account for and disgorge all payments received by or made to them from 407 Dearborn; award pre-judgment interest, attorneys' fees and costs; and such other and further relief as is just and proper.

## Count III
## Ferenc Claims Against Brenner and FAM

42.    Ferenc realleges and incorporates the allegations of paragraphs 1 through 19, paragraphs 21 through 26 and paragraphs 32 through 37 above as and for their allegations of this paragraph 42.

43.    Brenner and FAM had a fiduciary duty to Ferenc.

44.    FAM and Brenner advised Ferenc to make a number of investments in which Brenner and FAM were directly interested and from which they, along with Horrell, would benefit.

45.    In giving such advice, Brenner and FAM breached their fiduciary duty to Ferenc.

46.    Among other things, Ferenc paid to FAM "advisory fees" for managing a bond portfolio and "consulting fees" for other services ostensibly provided by Brenner and FAM.  During the period from October 1, 2006 through June 30, 2009, those fees were in excess of $160,000. FAM in turn paid those fees over to Brenner, in whole or in part.

47.    FAM and Brenner should be required to disgorge such fees.

48.    Ferenc did not know sufficient facts, and in the exercise of reasonable diligence could not have been expected to know sufficient facts, to put him on notice that he had been injured and that defendants had breached their fiduciary duties, or knowingly participated in a fiduciary breach, until on or after June, 2011.

WHEREFORE, Ferenc requests judgment in his favor against Brenner and FAM jointly and severally for damages in an amount to be determined at trial; an order directing Brenner and FAM to account for and disgorge all fees or profits received by or made to them from Ferenc; award pre-judgment interest, attorneys' fees and costs; and such other and further relief as is just and proper.

## Count IV
## RICO Claims Against Brenner and Horrell

49.     Plaintiffs reallege and incorporate the allegations of paragraphs 1 through 19, paragraphs 21 through 26 and paragraphs 32 through 37 above as and for their allegations of this paragraph 49.

50.     At all relevant times, Brenner and Horrell were "persons" as that term is defined in 18 U.S.C. § 1961(3).

51.     Brenner and Horrell were employed by and associated with an enterprise, hereinafter referred to as the "Enterprise," consisting of FAM, Fortuna Stream, and other entities in which Brenner and Horrell held or controlled the interests. These inter-related entities were owned, operated and controlled, in whole or in part, directly by Brenner and Horrell.  The Enterprise constituted an enterprise, as that term is defined in 18 U.S.C. § 1961(4), namely, a group of legal entities associated in fact.  The Enterprise constituted an organization whose members, associates, employees and/or agents functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise. The Enterprise was engaged in interstate commerce, and the activities of the Enterprise affected interstate commerce.

52.     The Enterprise operates to solicit from investors monies to be used by and for the benefit of various entities and/or projects in which Brenner and Horrell have an interest, and from which they receive fees and profits.

53.     From January, 2006 through at least June, 2009, Brenner and FAM, by private or commercial interstate carrier and email, solicited Ferenc, Legacy Re and Rock Solid to make investments, provided account statements, sent invoices and sent payments purporting to be profit, interest or other return on their investments. Brenner, FAM and Horrell's acts of interstate emailing, which were made in furtherance of the scheme to defraud, constitute acts of wire fraud proscribed by 18 U.S.C. § 1343. Brenner, FAM and Horrell's acts of interstate mailing and deliveries, which were caused to be made in furtherance of the scheme to defraud, constitute acts of mail fraud proscribed by 18 U.S.C. § 1341.  Together, these acts comprise a pattern of racketeering activity, as defined by 18 U.S.C. § 1961(1) and (5).

54.     Brenner and Horrell conducted and/or participated in the conduct of the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), by engaging in numerous acts of mail fraud and/or wire fraud.  Brenner and Horrell mailed and/or emailed to Ferenc, Legacy Re and/or Rock Solid various documents soliciting, describing and/or reporting on investments in Fortuna Stream and/or 407 Dearborn (as well as other investments such as Tyche Health Enterprises and Tyche Real Estate) and requesting that various documents be executed by Ferenc, Legacy Re and/or Rock Solid and returned to Brenner and/or Horrell.  Among other things, Brenner and FAM mailed to Ferenc, Legacy Re and/or Rock Solid the following:

a)  By cover letter dated November 15, 2005, the Third Quarter 2005 Financial Statements for Fortuna Stream

b)  By cover letter dated February 24, 2006, the  Fourth Quarter 2005 Financial Statements for Fortuna Stream

c)  By cover letter dated May 10, 2006,  the  2005 Audited Financial Statements and First Quarter 2006 Financial Statements for Fortuna Stream

d)  By cover letter dated August 8, 2006, the  Second Quarter 2006 Financial Statements for Fortuna Stream

e)  By cover letter dated November 19, 2006, the  Third Quarter 2006 Financial Statements for Fortuna Stream

f)  By cover letter dated February 24, 2007, the  Fourth Quarter 2006 Financial Statements for Fortuna Stream

g)  By cover letter dated May 31, 2007, the  First Quarter 2007 Financial Statements for Fortuna Stream

h)  By cover letter dated September 4, 2007, the  Second Quarter 2007 Financial Statements for Fortuna Stream

i)  By cover letter dated December 4, 2007, the  Third Quarter 2007 Financial Statements for Fortuna Stream

j)  By cover letter dated March 24, 2008, the  Fourth Quarter 2007 Financial Statements for Fortuna Stream

k)  By cover letter dated October 3, 2008, the  semi-annual 2008 Financial Statement for Fortuna Stream

l)  By cover letter dated November 30, 2008, the  third quarter 2008 Financial Statement for Fortuna Stream

m)  By cover letter dated March 20, 2009, the  Fourth Quarter 2008 Financial Statements for Fortuna Stream

| n)  By cover letter dated August 1, 2009, Financial Statement for Fortuna Stream for the six months ending June 30, 2009 |
| --- |
| o)  By cover letter dated March 7, 2010, the  Financial Statement for Fortuna Stream for the year end 2009 |
| p)  Letter dated March 10, 2010 |
| q)  Letter dated September 27, 2010 |
| r)  By cover letter dated March 16, 2011, the  Financial Statement for Fortuna Stream for the year end 2010 |
| s)  Invoice dated 8-4-08 requesting payment of "Consulting Fees" and "Advisory Fees" in the amount $215,118.71 |
| t)  Invoice dated 6-26-09 requesting payment of "Consulting Fees" and "Advisory Fees" and "Performance Fees" and other fees and expenses in the amount of $221,656.49 |
| u)  Invoice dated 6-26-09 to Legacy Re requesting payment of "Advisory Fees" and "Performance Fees" in the amount of $20,663.48 |

55.     Brenner and Horrell have willfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c), that is to conduct and/or participate, directly or indirectly, in the conduct of Enterprise's affairs through a pattern of racketeering activity based upon acts of mail fraud and wire fraud in violation of 18 U.S.C. § 1962(d).

56.     It was a further part of the conspiracy to implement and carry out the scheme to defraud and exploit Ferenc, Legacy Re and Rock Solid, so that defendants would enrich themselves through the operation of the Enterprise by, among other means, generating from the projects and entities in which Ferenc, Legacy Re and Rock Solid invested and distributing to defendants profits, salaries, bonuses and other

payments. Brenner and Horrell embraced the object of the conspiracy and knowingly acted to support and facilitate the accomplishment of its goals.

57.     On information and belief, each of the defendants named in this Count received a financial benefit for his or her participation in the scheme. Such financial benefits were the product of the scheme and could not have been realized had each of the defendants named in this Count not joined the Enterprise and carried out the scheme and fraud.

58.     Each defendant named in this Count began implementing the fraud and scheme in or about January, 2006, or at some unknown date prior thereto, and they continued to execute the fraud and scheme through the date of the commencement of this action.

59.     Ferenc, Legacy Re and Rock Solid have suffered a loss to their business and property as a result of the conspiracy, scheme and presumed fraud, including but not limited to the loss of their investment in the Scattered Loan Participations, and the improper transfer of property from 407 Dearborn.

60.     Ferenc, Legacy Re and Rock Solid did not know sufficient facts, and in the exercise of reasonable diligence could not have been expected to know sufficient facts, to put them on notice that they had been injured and that defendants had violated the laws until on or after June, 2011.

NGEDOCS: 1873480.9

WHEREFORE, Ferenc, Legacy Re and Rock Solid pray for entry of judgment in their favor and against Karen Brenner and Michael Horrell jointly and severally and for relief as follows, awarding:

A.      Treble damages, pursuant to 18 U.S.C. § 1964(c), in such amount as shall be proved at trial;

B.      Injunctive and other equitable relief, including an accounting of all fees, benefits and profits received in connection with the investments made by plaintiffs;

C.      Reasonable attorneys' fees and costs, pursuant to 18 U.S.C. § 1964(c); and

D.      Such other and further relief as this Court may deem just and proper.

Dated:  March 20, 2011

SIDNEY FERENC, LEGACY RE, LTD.
AND ROCK SOLID GELT LIMITED AND
407 DEARBORN, LLC


By:     /s/ Lawrence M. Benjamin
           One of Their Attorneys

Lawrence M. Benjamin (#6196417)
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Suite 1700
Chicago, IL  60602-3801
(312) 269-8000

NGEDOCS: 1873480.9