### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

```
SIDNEY FERENC, LEGACY RE, LTD.,      )
ROCK SOLID GELT LIMITED, and 407     )
DEARBORN, LLC,                       )
                                     )
           Plaintiffs,               )
                                     )
           v.                        )       No. 12 C 2071
                                     )
KAREN BRENNER, FORTUNA ASSET         )
MANAGEMENT, LLC, and MICHAEL         )
HORRELL,                             )
                                     )
           Defendants.               )
```

### MEMORANDUM OPINION

Before the court is Karen Brenner's and Fortuna Asset Management, LLC's ("FAM") motion to dismiss Count I of the plaintiffs' amended complaint. For the reasons explained below, we deny the defendants' motion.

### BACKGROUND

We will assume that the reader is familiar with our previous opinion in this case, which dismissed a majority of the plaintiffs' claims because they are governed by a binding agreement to arbitrate. See Ferenc v. Brenner, 927 F.Supp.2d 537, 550 (N.D. Ill. 2012). We held that only one claim belonged in this court: 407 Dearborn, LLC's claim against Brenner, FAM, and Horrell for breach of fiduciary duty. Id. at 546. Nevertheless, we dismissed that claim because 407 Dearborn had not satisfied Rule 9(b)'s

heightened pleading requirements.  Id. at 547-48.  The following allegations are drawn from 407 Dearborn's amended complaint.[1]

In March 2009, 407 Dearborn acquired property commonly known as 407 S. Dearborn, Chicago, Illinois (the "Dearborn Property"). (Am. Compl. ¶ 7.)  At that time, the manager of the 407 Dearborn was 407 Dearborn Manager, LLC; defendant FAM was the manager of 407 Dearborn Manager; and defendant Brenner was the managing member of FAM.  (Id. at ¶ 9.)  The complaint further alleges that defendant Michael Horrell held himself out as "co-manager" of 407 Dearborn and exercised "*de facto* control" over the company.  (Id. at ¶ 10.)[2] Horrell and Brenner were close business associates and had "various business interests together."  (Id. at ¶ 13.)  407 Dearborn alleges that Horrell and Brenner used their control of the company to cause it to pay improper fees to Horrell and his companies.  The amended complaint attaches a "General Ledger" listing payments by 407 Dearborn to Horrell and his affiliates.  (Id. at ¶¶ 11-12; see also 407 Dearborn "General Ledger," attached as Ex. C to Am. Compl.) The "Memo" field of the ledger lists the services that Horrell and his company purportedly rendered (e.g., "Building Repairs," "Building Supplies," "Cleaning Contract," "Leasing Commissions,"

---

[1]  407 Dearborn has repled its claim against the defendants in Count I of the amended complaint.  The other plaintiffs — Sidney Ferenc, Legacy Re, Ltd. and Rock Solid Gelt Limited — have repled the claims that we dismissed for improper venue, presumably to preserve their right to appeal.

[2]  The plaintiffs have settled their dispute with Horrell and have dismissed their claims against him.

Management Fees"). (Id.) The amended complaint refers generically to "mark-ups" and "other excessive charges," (id. at ¶ 14), but it does not challenge any particular charge on those grounds. The real thrust of the plaintiff's claim appears to be the more than $242,000 in "Management Fees" that FAM and Brenner allegedly caused the company to pay to Horrell and his affiliates. (See General Ledger at 3-4 (listing "Management Fees" paid to Aurora Real Estate and Management, Goriana Alexander, Mozart's Aria, and Chicago Historic Realty); see also Am. Compl. ¶ 12 (alleging that these parties are affiliated with Horrell).) Chicago Historic Realty added another $19,000 in "management fees" to the invoices that it submitted to 407 Dearborn for general building maintenance. (See Chicago Historic Realty Invoices, attached as Group Ex. A to Pl.'s Reply.)[3] The plaintiff alleges that Horrell, with the defendants' participation, was billing the company for services that were already being provided by a third-party property manager (Joseph Cacciatore). (Id. at ¶ 11.)

Besides these payments to Horrell and his companies, 407 Dearborn also challenges certain "loan repayments" to the defendants and their affiliates. (Id. at ¶ 18.) On March 4, 2010, 407 Dearborn paid FAM $950,000, and paid a company called First Chicago Financial LLC $108,000. (Id.) Four days later, it paid

---

[3] The invoices do not describe the basis for this fee, which was consistently 25% of the itemized services.

$30,300 to "Managers." (Id.) And on March 10, 2010, 407 Dearborn made a $71,969.50 interest payment to FAM. (Id.) 407 Dearborn alleges "on information and belief" that Brenner and/or Horrell were the ultimate recipients of these payments. (Id.) The company "does not have records which demonstrate that [the company] actually received the proceeds of the purported loans." (Id.)

## A. Legal Standard

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 556 (2007)). When evaluating a motion to dismiss a complaint, the court must accept as true all factual allegations in the complaint. Iqbal, 129 S. Ct. at 1949. However, we need not accept as true its legal conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

We previously held that the plaintiff's breach of fiduciary duty claim was governed by Rule 9(b), although we considered it a "close question." Ferenc, 927 F.Supp.2d at 547. 407 Dearborn has not asked us to revisit that question, instead arguing that its amended complaint satisfies Rule 9(b)'s heightened pleading requirements. See DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990) (To satisfy Rule 9(b), the plaintiff must allege "the who, what, when, where, and how [of the alleged fraud]: the first paragraph of any newspaper story."; see also Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co., 631 F.3d 436, 442 (7th Cir.2011) (noting that "the requisite information—what gets included in that first paragraph—may vary on the facts of a given case").

## DISCUSSION

### A.  Whether 407 Dearborn Has Satisfied Rule 9(b)

The defendants argue that 407 Dearborn's amended complaint is defective because it asserts a "claim" without articulating a particular legal theory. (See Am. Compl. at 1 ("407 Dearborn Claims Against Brenner, FAM, and Horrell").) The Federal Rules of Civil Procedure do not require plaintiffs to plead legal theories in their complaint. See Currie v. Chhabra, 728 F.3d 626, 629 (7th Cir. 2013) ("[W]e remind parties again that there is no duty to plead legal theories."). They merely require the plaintiff to give the defendant notice of his claim. Id. The defendants affect

ignorance about the nature of the duty that they allegedly owed 407 Dearborn, and how they were supposed to have breached it. (See Defs.' Mot. at 4-5.) But the plaintiff has clearly spelled out the nature of its claim in the amended complaint. FAM controlled 407 Dearborn Manager, and Brenner controlled FAM. The plaintiff alleges that, in that circumstance, the defendants had a duty to act in the company's best interests. They breached that duty by authorizing the company to pay excessive and duplicative "management fees" to Horrell and his affiliates. 407 Dearborn suggests several legal theories that would permit it to recover damages against the defendants for this conduct. (See Pl.'s Resp. at 2-6 (breach of the defendants' fiduciary duty to plaintiff; knowing participation in Horrell's breach of fiduciary duty; unjust enrichment).) The defendants argue that the plaintiff's claim is a nonstarter because it has not alleged that the defendants made any misrepresentations or material omissions. (See Def.'s Mot. at 6.) We previously held that the plaintiff's claim "sound[ed] in fraud," see Ferenc, 927 F.Supp.2d at 547, but that does not mean that it *must* prove the elements of fraud to prevail on a claim for breach of fiduciary duty. Even if the defendants made no effort to conceal what they were doing, that would not entitle them to act contrary to the company's best interests.

The dates and the amounts of the management-fee payments are listed in Exhibit C to the amended complaint, and in the invoices

attached to the plaintiff's response brief.[4]  We conclude that this is sufficient to satisfy Rule 9(b)'s particularity requirement.

**B.     Whether the LLC Agreement Forecloses the Plaintiff's Claims**

The defendants also argue that the challenged transactions were authorized by 407 Dearborn's operating agreement and therefore cannot support a claim for (or premised on) breach of fiduciary duty.    See 805 ILCS 180/15-5 (an operating agreement may not "eliminate or reduce a member's fiduciary duties," but it may "identify specific types or categories of activities that do not violate these duties, if not manifestly unreasonable"); see also Sirazi v. Panda Exp., Inc., No. 08 C 2345, 2011 WL 6182424, *19 (N.D. Ill. Dec. 13, 2011) (relying on an analogous provision in the Uniform Limited Partnership Act in granting the defendant summary judgment on the plaintiff's claim for breach of fiduciary duty). Before reaching that argument, we must address two threshold issues.    First, we reject the plaintiff's borderline frivolous argument that we may not consider the operating agreement when ruling on the defendants' motion to dismiss.  (See Pl.'s Resp. at 6.)    The plaintiff has attached the operating agreement to its amended complaint and bases its claim, at least in part, on the

---

[4]  Although the invoices were not attached to the amended complaint, 407 Dearborn refers to them at paragraph 14.  (See Am. Compl. ¶ 14 ("Many of the invoices submitted by Horrell's affiliates include an additional mark-up for 'management fees' on top of the other 'management fees' paid directly to Horrell.").)

terms of that agreement. (See Limited Liability Agreement for 407 Dearborn LLC ("LLC Agreement"), attached as Ex. 1 to Am. Compl.; see also Am. Compl. ¶ 18 ("[N]either Brenner, FAM and/or Horrell, including their affiliated entities, were authorized *under the operating agreement* to make loans to 407 Dearborn, and even if the loans were permitted, the payment of interest on such loans was not authorized.") (emphasis added).) Accordingly, the defendants may rely on LLC Agreement's terms to support their motion to dismiss. See, e.g., 188 LLC v. Trinity Industries, Inc., 300 F.3d 730, 735 (7th Cir. 2002). Second, the parties appear to agree that terms applicable to the company's "Manager" — 407 Dearborn Manager — also apply to the defendants. (See Pl.'s Resp. at 6-9; Defs.' Reply at 5-7.) We see no reason at this point to rule otherwise.

The defendants rely on §§ 5.1, 5.4, 5.5, and 5.6 of the LLC Agreement to support their argument that they were permitted to engage in the transactions alleged in the complaint. We will address the defendants' arguments with respect to each provision in turn. As the defendants point out, § 5.1 vests the Manager with substantial discretion to manage the company's affairs:

> 5.1 Management by the Manager. The business, property and affairs of the Company shall be managed by the Manager, and the Manager shall direct, manage and control the business of the Company. Except for situations in which the approval of the Members is expressly required by nonwaivable provisions of the Act, the Manager shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or

activities customary or incident to the management of the Company's interests.

(LLC Agmt. § 5.1.)  The fact that the Manager has broad discretion under § 5.1 to manage the company does not foreclose the plaintiff's claim that the defendants exercised that discretion improperly.  The defendants also argue that the LLC Agreement authorized the March 8, 2010 payment to "Managers:"

> 5.4 Compensation and Reimbursement of Manager.  The Company will pay on the date hereof through December 31, 2009 and on the first day of each calendar year hereafter an amount equal to the Management Fee for such calendar year. The Manager shall be entitled to reimbursement of ordinary and necessary business expenses incurred in connection with its duties to the Company.

(Id. at § 5.4.)  It is not clear whether the $30,300 payment really was for "Management Fees" as the LLC Agreement defines that term. (Cf. Am. Compl. ¶ 18 ("[T]he following amounts were paid to the following persons or entities, which were characterized in 407 Dearborn's general ledger as loan repayments: . . . $30,300 was paid to 'Managers' on March 8, 2010).)  And even if the LLC Agreement authorized that particular payment, it is only one of numerous payments for "management fees" that the plaintiff is challenging.  (See Am. Compl. ¶ 12.)  The defendants also contend that the plaintiff's claim is barred by the LLC Agreement's limits on Manager liability:

> 5.5 Liability of the Manager. The Manager shall not have liability to the Company or to any Member for any loss suffered by the Company, provided that such action or inaction does not constitute gross negligence or any of the following:

(a) A willful failure to deal fairly with the Company or the Members in connection with a matter in which a Manager has a material conflict of interest.

(b) A violation of criminal law, unless the Manager had reasonable cause to believe that his conduct was lawful, or no reasonable cause to believe that it was unlawful; or

(c) A transaction from which a Manager derived an improper pecuniary profit.

(LLC Agmt. § 5.5.)  Assuming that this provision applies to the defendants, the amended complaint clearly alleges a willful failure to deal fairly with the company.  Brenner and FAM allegedly caused the company to pay excessive and unnecessary management fees to Brenner's close business partner.  Finally, the defendants argue that the transactions with Horrell and his companies were permitted affiliate transactions:

> 5.6 Transactions with Manager and Affiliates. The Company may enter into agreements with a or [sic] any Affiliate thereof for the provision of property, goods or services to the Company, Provided that the price and terms for such property, goods, or services are no less favorable to the company than the price and terms for property, goods, or services reasonably available from unrelated Persons for comparable property, good or services in the same geographic area.

(Id. at § 5.6.)  Whether 407 Dearborn received services from Horrell and his companies on terms comparable to what it would have received from an unrelated company is a fact question that will have to await further development in discovery.

## CONCLUSION

The defendants' motion to dismiss Count I of the plaintiffs' amended complaint [47] is denied.  The defendants shall answer the amended complaint by March 28, 2014.  The parties shall serve their Rule 26(a) disclosures by April 11, 2014.  A status hearing is set for April 23, 2014 at 11:00 a.m. to schedule further discovery.


DATE:       March 6, 2014

ENTER:      _____

            John F. Grady, United States District Judge